UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY HARDIN,

               Plaintiff,               Case No. 2:18-cv-12051
                                              District Judge Terrence G. Berg
v.                                      Magistrate Judge Anthony P. Patti

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

               Defendant.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 11), GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 12) and AFFIRM THE COMMISSIONER'S DECISION

**I.**     **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12),

and **AFFIRM** the Commissioner's decision.

**II.**     **REPORT**

      This case concerns Plaintiff's alleged chronic pain and "habituation" to

Oxycontin,® *a.k.a.* oxycodone hydrochloride.[1]  Plaintiff, Jerry Hardin, brings this

action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner

---

[1] *See* https://www.fda.gov/media/78453/download (last visited Aug. 8, 2019).

of Social Security ("Commissioner") denying his application for disability

insurance (DI) benefits.  This matter is before the United States Magistrate Judge

for a Report and Recommendation on Plaintiff's motion for summary judgment

(DE 11), the Commissioner's cross-motion for summary judgment (DE 12), and

the administrative record (DE 8).

### A.    Background and Administrative History

Plaintiff alleges his disability began on October 1, 2007, his 50th birthday.

(R. at 211, 242.)  In his disability report, he lists several conditions (bi-lateral

rotator cuff tears, phlebitis, neuropathy, lower back-pain, weakness in hands,

anxiety, and depression) as limiting his ability to work.  (R. at 245.)  His

application was denied in January 2015.  (R. at 103-111, 112, 115-118.)

Plaintiff requested a hearing by an Administrative Law Judge ("ALJ").  (R.

at 119-120.)  On February 1, 2016, ALJ Regina Sobrino held a hearing, at which

Plaintiff and a vocational expert (VE), Timothy Lee Shaner, testified.  (R. at 67-

102.)  On February 19, 2016, Plaintiff amended his onset date to July 1, 2011.  (R.

at 238.)  ALJ Sobrino held a supplemental hearing on February 2, 2017, at which

Plaintiff, medical expert Henry Urbaniak, and VE Shaner testified.  (R. at 28-66.)[2]

---

[2] Henry S. Urbaniak, Jr., M.D., completed a medical interrogatory regarding
physical impairments, dated July 9, 2016.  (R. at 511-523, R. at .)  At the February
2, 2017 administrative hearing, Dr. Urbaniak was examined by the ALJ and
Plaintiff's counsel.  (R. at 42-55.)  In an introductory portion of his brief, Plaintiff
cites 2 or 3 pages of the hearing transcript to support his statement that Dr.

On August 30, 2017, ALJ Sobrino issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act at any time from July 1, 2011, the alleged onset date (AOD), through December 31, 2012, the date last insured (DLI).  (R. at 8-25.)[3]

Plaintiff submitted a request for review of the hearing decision/order.  (R. at 210.)  However, on May 1, 2018, the Appeals Council denied Plaintiff's request for review.  (R. at 1-5.)  Thus, ALJ Sobrino's decision became the Commissioner's final decision.

Plaintiff timely commenced the instant action on June 29, 2018.

## B.    Plaintiff's Medical History

The administrative record contains approximately 236 pages of medical records, which were available to the ALJ at the time of her August 30, 2017 decision.  (R. at 24-25, 289-524 [Exhibits 1F-10F].)  Of particular import are the records of James E. Honet, M.D. of Neuro Pain Consultants, P.C. / Pain Care Associates.  (R. at 289-366, 451-467, 468-510, 524.)

These materials will be discussed in detail, as necessary, below.

---

Urbaniak "could not provide any worthwhile testimony[.]"  (DE 11 at 4, R. at 49-51.)  The Court does not interpret this assertion as an independent statement of error, and, in any event, the ALJ assigned little weight to Dr. Urbaniak's opinion and found the medical expert's testimony "unpersuasive."  (R. at 18.)

[3] As Plaintiff points out, he was 55 years old on the December 31, 2012 DLI.  (DE 11 at 3.)  *See* 20 C.F.R. § 404.1563(d) ("Person of advanced age.").

## C.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his AOD of July 1, 2011 through his DLI of December 31, 2012.  (R. at 13.)  At **Step 2**, the ALJ found that, through the DLI, Plaintiff had the following severe impairments:  **(1)** degenerative joint disease (DJD); and, **(2)** obesity.  (*Id*. at 13-14.)  At **Step 3**, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (*Id*. at 14.)  **Between Steps 3 and 4** of the sequential process, the ALJ evaluated Plaintiff's residual functional capacity ("RFC")[4] and determined that, through the DLI, Plaintiff had the RFC:

> . . . to perform medium work [*i.e.*, *exertional limitations*]. . ., with the following additional limitations:  no climbing of ladders, ropes, or scaffolds; no crawling [*i.e.*, *postural limitations*]; no reaching above shoulder level or behind the back; and no more than frequent reaching in other directions [*i.e.*, *manipulative limitations*].

(*Id*. at 14.)  At **Step 4**, the ALJ determined that, through the DLI, Plaintiff was able to perform past relevant work as a vehicle assembler.  (*Id*. at 18-19.)  Alternatively,

---

[4] The claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec*., 276 F.3d 235, 239 (6th Cir. 2002).

at **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff also could have performed, such as laundry worker, packager, and stock handler.  (*Id*. at 19-20.)  The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from July 1, 2011, the AOD, through December 31, 2012, the DLI.  (*Id*. at 20.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

As Plaintiff would phrase it, the ALJ did not "accurately characterize" his impairments in the hypothetical to the VE at the February 2, 2017 administrative hearing.  (DE 11 at 4, 7-12; R. at 56-63.)  Stated otherwise, Plaintiff attempts to argue that "the ALJ's conclusion at [S]tep 5 . . . is not supported by substantial evidence[,]" *Brewer v. Berryhill*, No. 2:17-CV-00297-REB, 2018 WL 4087993, *7 (D. Idaho Aug. 27, 2018).  (*See* DE 11 at 6, 15, 16.)  However, in substance, Plaintiff claims that his chronic pain and "habituation" to Oxycontin, as supposedly reflected in James F. Honet, M.D.'s treatment records (R. at 316-356) and Plaintiff's February 1, 2016 hearing testimony,[5] are not adequately addressed by the RFC's limitations.  (*See* DE 11 at 3-4, 6-7; R. at 14.)

It must be borne in mind that "during the first four steps, the claimant has the burden of proof; this burden shifts to the Commissioner only at Step Five." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  *See also, Young v. Secretary of Health and Human Servs.,* 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.,* 820 F.2d 768, 771 (6th Cir.1987).  Although Plaintiff purports to frame his statement of error as a challenge to the ALJ's Step 5

---

[5] Plaintiff expressly cites three pages of the transcript.  (DE 11 at 3, R. at 71, 82-83.)  However, Plaintiff may have intended to also cite two other pages.  (*See*, *e.g.*, R. at 79, 87.)

determination (*see*, *e.g.*, DE 11 at 16), or perhaps the ALJ's Step 4 finding that Plaintiff was capable of performing his past relevant work as a vehicle assembler (R. at 18), this is in reality a "veiled attack" on the ALJ's underlying RFC finding, since the combined first and second hypotheticals posed to the vocational expert in this matter are essentially identical to the RFC.  *See Kirchner v. Colvin*, No. 12-CV-15052, 2013 WL 5913972, at *11 (E.D. Mich. Nov. 4, 2013) ("Kirchner's Step Five argument is a veiled attack on the ALJ's underlying RFC finding[,]" because "this is not a scenario where the ALJ's hypothetical failed to match up to the RFC he ultimately imposed."); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999) ("To require the Commissioner to prove a claimant's RFC at step five is essentially to partially shift the burden of proof required of a claimant at step four to the Commissioner.").

Plaintiff claims that he treated with Dr. Honet for, *inter alia*, "pain management and treatment of degenerative joint disease of the shoulders, cervical radiculopathy, . . . and chronic pain[,]" and refers to "limited range[s] of motion[] of both shoulders, positive [S]purling[] test indicating cervical radiculopathy, right knee pain, and limited range of motion of the lumbar spine."  (DE 11 at 3; *see also* DE 11 at 6.)  The Commissioner contends that the ALJ "supportably found no cervical impairment because there is no medically acceptable evidence of such impairment[,]" and "was not required to include additional limitations in the

hypothetical posed to the [VE]." (DE 12 at 9-14.)  As can be seen below, the

ALJ's combined first and second hypotheticals are consistent with the RFC, and,

as to the true issue here, the RFC was supported by substantial evidence.  Plaintiff

has failed to show otherwise.

> **1.    The ALJ's RFC is consistent with the hypotheticals used at the administrative hearing.**

At Step 2, the ALJ determined that Plaintiff's severe impairments included

DJD and obesity.  (R. at 13-14.)  At Step 3, the ALJ determined that Plaintiff's

musculoskeletal impairment did not meet or medically equal the requirements of

listing section 1.02, 1.04, or any other relevant listing section.  (R. at 14.)

Additionally, the ALJ noted that the additional and cumulative effects of obesity

were considered in evaluating whether the criteria of any listed impairment was

met or equaled, as well as in evaluating Plaintiff's RFC, in the insured period.  (*Id*.)

Then, in assessing Plaintiff's RFC, the ALJ noted that Plaintiff was able to perform

work at the medium exertional level, with certain postural and manipulative

limitations.  (R. at 14-18.)

These RFC limitations are consistent with those posed in the combined first

and second hypotheticals.  (R. at 14, 56-57.)  Moreover, on February 2, 2017, the

VE testified that a person with those limitations could do Plaintiff's past work.

(*Id*.)  Thus, absent a successful challenge to the ALJ's *RFC assessment* or the

*characterization of Plaintiff's past relevant work*, or absent some type of error in

the *VE's substantive testimony*, the ALJ's Step 4 finding is supported by substantial evidence.  Although Plaintiff spends nearly six pages of his brief quoting questions and answers from the VE's February 2, 2017 testimony (*see* DE 11 at 7-12, R. at 56-63), Plaintiff does not appear to be challenging the ALJ's characterization of Plaintiff's past relevant work, nor does Plaintiff seem to allege some type of error in the VE's substantive testimony; rather, with markedly little analysis, Plaintiff seems to be challenging whether the hypotheticals accurately represent his alleged limitations, namely the habituation to Oxycontin, chronic pain, the positive Spurling test, and his need for medication (*see* DE 11 at 3-4, 6-7), *i.e.*, a veiled attack on the underlying RFC finding.

> **2.    Plaintiff has not shown error in the ALJ's RFC assessment.**

Plaintiff refers to his chronic pain and Dr. Honet's medical records (including a positive Spurling's test and monthly prescriptions of Neurontin or Oxycontin), as well as his "habituation" to Oxycontin.  (DE 11 at 3-4, 6-7.)  In so doing, he expressly cites testimony from both hearings, as well as a 40-page range within the office treatment records from Neuro Pain Consultants, P.C., which covers the 13 month period <u>between July 27, 2011 and August 21, 2012</u>.  (*Id.*, R. at 316-356.)

> **a.    Spurling's test, chronic pain, Plaintiff's credibility and the weight of Dr. Honet's opinion**

Preliminarily, if Plaintiff wished for the Court to review his positive

Spurling test (*see* DE 11 at 3, 6), he should have provided a more specific citation,

especially considering that other exhibits contain records from Dr. Honet, such as

Exhibits 6F & 7F (Pain Care Associates) and Exhibit 10F (an unsigned

questionnaire).  The Commissioner's brief is more helpful in this regard, as she

cites a July 27, 2011 Spurling's maneuver, which revealed "mild neck pain . . .[,]"

(R. at 316),[6] as well as a May 1, 2012 Spurling's test, which "cause[d] no pain[,]"

(R. at 292).  (*See* DE 12 at 5, 7, 11.)  Still, even if Plaintiff intended to refer to the

July 27, 2011 positive Spurling's test, Plaintiff fails to show how it should have

changed the ALJ's negative credibility finding or the RFC.

More specifically, Plaintiff's mere citations to his own testimony and to Dr.

Honet's medical records do not provide robust argument that the ALJ errantly

addressed Plaintiff's credibility or the opinion evidence.  The ALJ determined that:

**(a)** Plaintiff's DJD and obesity were severe impairments; **(b)** Plaintiff's

impairments did not meet or medically equal the severity of a listed impairment;

but, **(c)** Plaintiff was exertionally limited to medium work, with certain postural

and manipulative limitations.  (R. at 13-18.)[7]  In formulating the RFC, the ALJ

---

[6] In fact, the ALJ expressly cited this record at least three times, in one case
acknowledging the "reported cervical pain[.]"  (R. at 15-16.)

[7] Based on Plaintiff's counsel's February 2, 2017 questions to the VE (R. at 60-63),
and Plaintiff's brief's quotation of this portion of the hearing transcript (DE 11 at

found that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms during the relevant period are not entirely consistent with the medical evidence and other evidence in the record.  (R. at 15.)  Also, the ALJ acknowledged Dr. Honet as Plaintiff's "pain management specialist," reviewed many Pain Care Associates / Neuro Pain Consultants, P.C. records spanning the period from September 2011 to September 24, 2012, and assigned "little weight" to Dr. Honet's February 6, 2017 questionnaire, "because it is unsigned and the author did not make any functional assessment of the claimant, but only noted a treatment relationship and diagnoses."  (R. at 16-17.)  The ALJ was well within her discretion to discount the opinion on those bases.  The ALJ also noted, as the Court likewise notes, that the questionnaire thrice responded with the single word "Unknown" in response to the seemingly crucial queries:  **(a)** whether Plaintiff was employable during 2011 to 2012; **(b)** what restrictions would have been placed on him; and, **(c)** whether he could "perform any gainful employment on a regular basis during this period[.]"  (R. at 17, 524.)

Plaintiff has not shown that the ALJ's credibility finding or treatment of Dr. Honet's records (or those of his offices, Neuro Pain Consultants, P.C. or Pain Care

---

10-12), the Undersigned suspects that Plaintiff intended to challenge the ALJ's manipulative limitations, *i.e.*, no reaching above shoulder level or behind the back and no more than frequent reaching in other directions (R. at 14.)  But this is just a guess.

Associates) was errant.  In fact, despite Plaintiff's own reference to "complaints of chronic pain[,]" (DE 11 at 6), his only references to "credibility" appear in what amounts to a standard of review paragraph and in his conclusion section.  (*See* DE 11 at 5, 16.)

### b.    "Habituation" to Oxycontin

A separate word must be said about Plaintiff's contention that his "habituation" to Oxycontin should have been accounted for in his RFC or in the hypothetical to the VE.  (DE 11 at 4, 7.)[8]  Plaintiff's citations to the medical record are sparse and, where they exist, exceedingly broad.  (DE 11 at 3.)  The 40-page range of office treatment records from Neuro Pain Consultants, P.C., which he does cite, covers a 13 month period <u>between July 27, 2011 and August 21, 2012</u>, as previously noted.  (*Id*., R. at 316-356.)  The Court should not have had to paw

---

[8] It is unclear to which of the possible definitions of *habituation* Plaintiff refers, "tolerance to the effects of a drug acquired through continued use" or "*psychological* dependence on a drug after a period of use" or "decrease in responsiveness upon repeated exposure to a stimulus."  *See* https://www.merriam-webster.com/dictionary/habituation (emphasis added).  Given the context of his largely undeveloped argument, the Court assumes it is the first or third, but not the second definition.  Notably, Plaintiff does refer to his "need to take" Oxycontin "regularly . . . ."  (DE 11 at 6.)  This is consistent with the fact that it had been *prescribed regularly*, although Plaintiff did testify that he became "addicted" to Oxycontin.  (R. at 83.).  There are, however, multiple references to his addiction to *nicotine*. (*See, e.g.,* R. at 317, 319, 321, 327, 329, 331-334, 339, 341.)  Plaintiff makes no showing that any of this affected his ability to work.

through these records, page by page, to determine if the ALJ was justified in not

accounting for Plaintiff's alleged "habituation" to Oxycontin.

Nonetheless, within reason, it has.  Based upon this review, the Undersigned

finds that the ALJ was under no obligation to include such a limitation, as

substantial evidence exists in support of a conclusion that Plaintiff was not

habituated to or limited *by Oxycontin* (as Plaintiff here contends), although he does

appear to have abused drugs at times during his treatment.  First, the ALJ did not

ignore this issue, as Plaintiff would suggest, but acknowledged that Dr. Honet

"wrote a letter [dated September 24, 2012] informing the claimant that a 'urine

drug screen showed multiple inconsistencies and evidence of illicit drug use[,]'"

and "stated that he felt he was no longer able to properly care for the claimant and

that the claimant needed to seek substance abuse treatment (the names of two

treatment centers were provided in th[e] letter)[.]"  (R. at 17 (citing R. at 361).)

Second, notwithstanding Plaintiff's citation to his testimony that he "became

habituated to OxyContin . . . [,]" which habituation he contends should have been

included in the hypotheticals to the VE (DE 11 at 3, 4, 7; R. at 83), Plaintiff fails to

point out any evidence as to the severity of his off-prescription drug use or how his

drug usage affected his ability to work and, therefore, why or how it should have

been accounted for in his RFC.  Keeping in mind that Plaintiff's alleged onset date

is July 1, 2011, the Court does recognize that in September 2011 Plaintiff admitted

self-medicating with a pain "pill of someone else's," because "he did not have his pain medications with him[,]" and with "Klonopin of someone else's for difficulty sleeping[,]" and his nurse practitioner consequently lowered his dosage of Oxycontin.  (R. at 324-325).  Also, in March 2012, Plaintiff tested positive for morphine.  (R. at  335.).  However, on May 29, 2012, Plaintiff reported that he "is willing to make appropriate changes to be in compliance with monitoring program and practice narcotics agreement[.]"  (R. at 343.)  Records from June, July and August 2012 confirm that he "displays no aberrant behaviors or other signs of inappropriate medication usage and recent EDS/MAPS have been appropriate for medication pain prescribe[d]."  (R. at 348, 352, 356.)  The records cited by Plaintiff also include multiple reports that he was not receiving pain medications from other practitioners, not taking any over-the-counter medications, and not taking any illegal substances. (*Id.* at 341, 345, 349, 353; *see also* R. at 357.)  Perhaps more significantly, the range of records cited by Plaintiff additionally shows that:

- Plaintiff's January 10, 2012 reports of "fair pain relief taking OxyContin" and that he was "currently working outside the home in a physically demanding job."  (R. at 331)

- Plaintiff's February 7, 2012 report of "fair pain relief taking OxyContin and Norco[,]" and the nurse practitioner's plan to "continue his medication without change."  (R. at 333)

- On June 26, 2012, July 24, 2012 and August 31, 2012, Plaintiff reports that his overall pain relief was "fair" and adequate (R. at 345, 348, 349, 352, 353, 356)

Even the September 18, 2012 record from Dr. Honet's office – outside the range of records to which Plaintiff points but made just six days before Dr. Hornet's aforementioned September 24, 2012 termination of treatment due to positive drug screens – notes Plaintiff's reports that he was currently employed and was receiving an adequate level of relief (R. at 357) and reflects observations of logical thought content and normal rate of thoughts, normal mood and appropriate affect, and no hallucinations, no delusions present, and no psychotic thoughts (R. at 359). In other words, even if he was abusing drugs, there is no evidence that this affected his functioning at that time. And, as previously discussed, when given the opportunity to render an opinion as to Plaintiff's employability and ability to perform gainful employment during the period of treatment, or as to what restrictions would be necessary, Dr. Honet was unable to do so. (R. at 524.) By July 3, 2014, albeit also outside of the range of records cited by Plaintiff, he reported that he felt well and was working full-time. (R. at 379.)

### c.   Plaintiff's failure to support a factual argument or develop a legal argument

With amazing similarity to the brief Plaintiff's counsel filed in *Dembinsky v Commissioner Soc. Sec.*, Case No. 2:18-cv-10532-AC-APP (E.D. Mich.) (DE 18

therein), a case in which the Undersigned recently issued a report and recommendation addressing the very same arguments made here, Plaintiff lifts whole paragraphs from U.S. Magistrate Judge Ronald E. Bush's opinion (D. Idaho) and adopts them as original content within his brief, without attribution. (*Compare* DE 11 at 5-6, 13-17, *with Brewer*, 2018 WL 4087993 at *1-3, 7.) *See also Dembinsky* (DE 21 at 11 therein). This becomes particularly obvious in light of the fact that all but one of the Court of Appeals cases cited by Plaintiff are from the Ninth Circuit, in which the District of Idaho comfortably sits.[9] But the wholesale lifting of Judge Bush's opinion becomes most patent where Plaintiff's brief boldly states that, "[t]he action *is therefore remanded* to the Commissioner so that the ALJ can clarify his hypotheticals to the vocational expert and determine whether

---

[9] The only Sixth Circuit case mentioned by Plaintiff is *Minor v. Commissioner of Soc. Sec.*, for which he provides only the appeal number and date of decision. (DE 11 at 6.) The Court's own sleuthing reveals that Plaintiff is referring to *Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 438 (6th Cir. 2013), wherein the analysis addressed: **(a)** objective medical evidence and the diagnosis of fibromyalgia; **(b)** the treating physician rule; and, **(c)** hypothetical questions to the VE. *Minor*, 513 F. App'x at 433-438. Without providing a more specific citation to *Minor*, such as the page number to which Plaintiff refers, the Court can only assume that Plaintiff cited this case for its references within the first section to "positive" findings, treatment with medication, and drug-seeking behavior. *Minor*, 513 F.App'x at 433, 435-436. More specifically, the Court suspects that Plaintiff cited *Minor* for its acknowledgement that, "'unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs.'" *Id.* at 434 (quoting *Rogers*, 486 F.3d at 243 (6th Cir. 2007)). Even so, Plaintiff's brief mention of the *Minor* case does not, by itself, amount to a developed argument that the ALJ's credibility determination or evaluation of fibromyalgia was errant.

Petitioner is able to perform gainful employment in the national economy." (DE 11 at 15 (emphasis added)) (referencing one of the aforementioned 9th Cir. cases). One wonders what more there is for this Court to do, once Plaintiff has remanded his own case.

Moreover, Plaintiff's 8-page "argument" section consists of approximately: **(a)** 5.5 pages of the VE's testimony (R. at 56-63); **(b)** 1.5 pages lifted from *Brewer*, 2018 WL 4087993 at *1-2, 7; and **(c)** 1 page discussing chronic pain, Dr. Honet's medical records, and prescription medication, etc. (*See* DE 11 at 5-12.) And, in what amounts to a single page of argument tailored to this case, Plaintiff does not provide record citations. (DE 11 at 6-7.) Thus, the Court is left to assume that the medical records to which Plaintiff refers are *somewhere* within the 40-page range he cites in his "introduction" section. (DE 11 at 3, R. at 316-356.) As I wrote in *Dembinsky*, "[t]his type of lazy briefing is a disservice to the client and, frankly, wastes the Court's time. If Plaintiff's counsel is not invested enough to carefully apply the law to the actual record in this case, the Court cannot be expected to dig through the record and do so on Plaintiff's behalf." *Dembinsky* (DE 21 at 12.)[10]

---

[10] *See Davis v. Comm'r of Soc. Sec.*, No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D. Mich. July 29, 2016) (Patti, M.J.) ("[T]he Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the 379-page record, particularly where Plaintiff has failed to use the adversarial process to point out any inconsistencies."), *report and recommendation adopted*, No. 15-cv-12644, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016) (Leitman, J.).

### F.   Conclusion

If Plaintiff intended to show that "neither the hypothetical questions nor the answers properly set forth all of [his] impairments," (DE 11 at 6), he has failed to do so.  Plaintiff has the burden of proof on his statement of error with respect to the RFC.  *Walters*, 127 F.3d at 529.  Plaintiff has not shown legal error in the ALJ's RFC assessment, and the ALJ's Step 4 finding is supported by substantial evidence.  Furthermore, Plaintiff's "almost complete lack of argument development renders the majority of his arguments waived. '[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"  *Spiteri v. Colvin*, 2015 WL 7258749, at *3 (E.D. Mich. Nov. 9, 2015) (Stafford, M.J.) (internal and external footnotes omitted) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-996 (6th Cir. 1997)), *report and recommendation accepted at* 2015 WL 8538036 (E.D. Mich. Dec. 11, 2015) (Michelson, J.).  For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (DE 11), **GRANT** Defendant's motion for summary judgment (DE 12), and **AFFIRM** the Commissioner of Social Security's decision.

### III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 13, 2019                    s/*Anthony P. Patti*
                                           Anthony P. Patti
                                           UNITED STATES MAGISTRATE JUDGE